**STATE, EX REL., SHRIVER, Relator-Appellee, v ELLIS, Respondent-Appellant.**

**STATE, EX REL., SOMMER, Relator-Appellant, v ELLIS, Respondent-Appellee.**

**STATE, EX REL., STRICKLIN, Relator-Appellant, v ELLIS, Respondent-Appellee.**

**STATE, EX REL., GRIFFITHS, Relator-Appellant, v ELLIS, Respondent-Appellee.**

Ohio Appeals, Seventh District, Belmont County.

Nos. 813, 814, 815 and 816.   Decided December 14th, 1946.

Thornburg & Lewis, St. Clairsville, and Wilbur Y. Armstrong, Bellaire, for relator-appellee and relators-appellants.

Ross Michener, Bridgeport, and Frank W. Ellis, Martins Ferry, for respondent.

## OPINION

By PHILLIPS, J.

Relators were discharged by respondent, the duly appointed, qualified and acting Director of Public Service and an executive officer of the city of Martins Ferry, Ohio, a municipal corporation duly organized and existing under and by virtue of the laws of that state, in which corporation they worked when discharged.

Subsequent to discharge relators filed separate suits in mandamus in the court of common pleas seeking restoration to their respective former "positions" on the alleged ground that they were civil service employees of the city of Martins Ferry, Ohio, when discharged, and that respondent violated the law and acted in an arbitrary and unwarranted manner in removing them. Alternative writs were issued, respondents' answered, and the cases were submitted to the trial judge on their merits. The trial judge found relator Shriver was in the classified service, allowed to him the writ prayed for, and ordered him restored to the "position" from which he had been discharged; and found relators Sommer, Stricklin and Griffiths were not in the classified service but were deputies performing the work of their principal and held an "undoubted fiduciary relationship to him", and denied each of them a writ of mandamus restoring them to the "positions" from which they had been removed.

Respondent-appellant Ellis appealed to this court on questions of law from the judgment of the court of common pleas, and relators-appellants Sommer, Stricklin and Griffiths on questions of law and fact from the judgment of that court rendered against them. The latter cases were not appealed properly on questions of law and fact. Accordingly the words "and fact" were striken from the notices of appeal of relators-appellants; and it appearing by agreement of counsel that a bill of exceptions containing the testimony offered in

all four cases could be used in all such cases and had been prepared and settled, but not filed in the court of common pleas within the statutory period, leave was granted to relators-appellants to file such bill of exceptions in their cases instanter (see §11564, GC), and those appeals were retained, argued, submitted and will be determined as appeals on questions of law upon the transcript of the docket and journal entries, the pleadings, and the evidence as disclosed by the bill of exceptions.

Notwithstanding the fact that respondent-appellant Ellis appealed his case on questions of law properly this court was without power to grant him leave to file a bill of exceptions. See §11564, GC. Therefore the appeal of respondent-appellant Ellis was submitted, retained, argued and will be determined as one on questions of law upon the transcript of the docket and journal entries and the pleadings upon which the case was tried in the court of common pleas.

By agreement of counsel and consent of this court the four appeals were argued together and disposition of the contentions of the respective parties as urged in those appeals will be made in this opinion.

The questions presented by the appeals of relators, all of whom, as disclosed by the record, before discharge were listed by appointments and requests of former directors of public service of the city of Martins Ferry, Ohio, on the rolls of the civil service commission then as being in the classified service after serving prior thereto varying periods of time as unclassified employees, is whether under the law, the pleadings and the evidence they, or any of them, were in the classified service of the City of Martins Ferry, Ohio, when discharged.

It is conceded that relators were removed without respondent's compliance, or attempted compliance, with law relating to removal of civil service employees; that no classified employee can be discharged arbitrarily; and that if any such relator, or relators, were legally in the classified service when discharged such relator, or relators, must be restored to the position, or positions, from which he or she was removed by respondent.

In his answer to relator Shriver's petition respondent alleged that, among other duties, relator Shriver had charge of "distribution of water in its entirety", "mechanical care of pumps", was "inspector of all water lines in dwellings, business houses, factories, or any place, or places, where water is used"; and was "collector of delinquent water rents"; had "general supervision along with Director of Public Service over

the assistant superintendent, pipe fitters and helpers, laborers and pump operators"; had "executive duties in the procurement of material and supplies"; and maintained "a close confidential relationship with Director in the matter of water works policy in operation, maintenance and expansion"; and that it was his duty to "keep and maintain a complete record of all water works affairs and functions"; and to "test and record according to State Health Department rules and regulations water as required."

In his answer to relator Shriver's petition respondent alleged, and in his reply thereto such relator denied, "that he has executive duties in the procurement of materials and supplies, as set forth in paragraph three of said fourth defense; denies that he maintains a close confidential relationshhip with the Director of Public Service in the matter of the Water Works policy in operation, maintenance and expansion; denies that the duties of said Superintendent and Inspector are such that it is not practicable to determine the merit and fitness of applicants by competitive examinations, and that the occupant of said position performs duties which necessarily sustain an intimate fiduciary and confidential relationship with the Director of Public Service."

Respondent did not allege in his answer that relator Shriver was a deputy having authority to act as such under the unclassified provisions of the statutes.

The evidence (which we have the right to consider) in the case of relator Sommer, as disclosed by the bill of exceptions, reveals he discharged the duties of superintendent of a cemetery owned by the city of Martins Ferry, Ohio, of which he had general charge; that he employed and directed the work of all employees thereof, all of whom were under his supervision; that he was authorized to and did sell cemetery lots and to and did collect therefor; and to transact all such business as is ordinarily and customarily transacted by one occupying such a poition, but was under direction of respondent in the platting of new additions; that he was permitted to and did buy certain materials and small tools and equipment essential to the maintenance and care of such a cemetery; that he charged and collected for all services rendered owners of lots in such cemetery to the amount in 1935 of $7,000.00, which included burial charges, various foundation constructions and general and special care of cemetery lots, which together with all income which was solely collected by him from the operation of such cemetery (except amounts paid by lot owners for perpetual care which he did not collect), was accounted for

by him; and finally that he was the sexton of such cemetery.

While employed as a general clerk in the light and water departments of the city of Martins Ferry, which employment she secured by passing a civil service examination which she was requested to take, relator Stricklin was under the general supervision of relator Griffiths, and received no instructions from the director of public service. There is evidence that she was periodically in charge of a collection window situated next to that of relator Griffiths, was charged with a sum of money which she used as change, kept her own cash account, and occasionally manned the window of relator Griffiths during which time she used the latter's cash drawer; that she accounted for and delivered all money collected by her to relator Griffiths, who in turn banked it, and that she was bonded in the amount of $1,000.00.

When discharged, the respondent-relator Griffiths was chief clerk in the Water and Light Departments of the City of Martins Ferry, Ohio, where she was formerly a bookkeeper, and where since November, 1943, she was enrolled as a classified service employee. In the discharge of her duties as such chief clerk, she collected water and light charges due from consumers, which she kept in her possession over night and banked the next day. In a year she handled as much as $350,000.00, for the payment of all of which monies she was bonded in the amount of $5,000.00, and for which she was required to and did account to the auditor of that city.

In substance it is the duty of the director of public service to "manage and supervise all public works and undertakings of the city, except as otherwise provided by law"; to "supervise the improvement and repair of streets, avenues, alleys, lands, lanes, squares, wharves, docks, landings, market houses, bridges, viaducts, aqueducts, sidewalks, playgrounds, sewers, drains, ditches, culverts, ship channels, streams and water courses, the lighting, sprinkling and cleaning of public places, the construction of public improvements and public works, except those having reference to the department of public safety, or as otherwise provided" in the sections of the General Code cited below; to "manage municipal water, lighting, heating, power, garbage and other undertakings of the city, parks, baths, playgrounds, market houses, cemeteries, crematories, sewage disposal plants and farms"; to "supervise the construction and have charge of the maintenance of public buildings and other property of the corporation not otherwise provided for" in the sections of the General Code prescribing his duties; to "manage all other matters provided by the council in con-

nection with the public service of the city"; to employ "super-intendents, inspectors, clerks and laborers"; to "make such by-laws and regulations as he deems necessary for the safe, eco-nomical and efficient management and protection of the water works"; to "take possession and charge, and have the entire management, control and regulation of public graveyards, bur-ial grounds, and cemeteries located in or belonging to the corporation, subject to its ordinances"; and to "direct, all the improvements and embellishments of the grounds and lots,. protect and preserve them, and, subject to the approval of the council, appoint necessary superintendents, employees and agents, determine their term of office and the amount of their compensation." See §§4324, 4325, 4326, 4327, 3957, 4141 and 4162,. GC.

It is also the duty of the director of public service to "man-age, conduct, and control the water works, furnish supplies of water, collect water rents, and appoint necessary officers and agents"; and "make rules and regulations for the administra-tion of the affairs under his supervision." Further, he may "establish such sub-departments as may be necessary and de-termine the number of superintendents, deputies, inspectors,. engineers, harbor masters, clerks, laborers and other persons, necessary for the execution of the work and the performance of the duties of this department." See §§3956, 4323 and 4327, GC.

**Article XV, Section 10,** of the Constitution of Ohio pro-vides as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

**Section 486-8, GC,** which designates public employees either as classified or unclassified employees fixes the status of rela-tors in these cases and provides inter alia as follows:

"(a) The unclassified service shall comprise the following positions, which shall not be included in the classified service, and which shall be exempt from all examinations required in this act:

"3. The members of all boards and commissions and heads of principal departments, boards and commissions ap-pointed by the governor or by and with his consent; and the

members of all boards and commissions and all heads of departments appointed by the mayor, or if there be no mayor such other similar chief appointing authority of any city or city school district. Provided, however, that nothing contained in this act shall exempt the chiefs of police departments and chiefs of fire departments of municipalities from the competitive classified service as provided in this act.

"8. Three secretaries, assistants or clerks and one personal stenographer for each of the elective state officers; and two secretaries, assistants or clerks and one personal stenographer for other elective officers and each of the principal appointive executive officers, boards or commissions, except civil service commissions, authorized by law to appoint such secretary, assistant or clerk and stenographer.

"9. The deputies of elective or principal executive officers authorized by law to act for and in the place of their principals and holding a fiduciary relation to such principals.

"(b). The classified service shall comprise all persons in the employ of the state, the several counties, cities and city school districts thereof, not specifically included in the unclassified service, to be designated as the competitive class and the unskilled labor class.

"1. The competitive class shall include all positions and employments now existing or hereafter created in the state, the counties, cities and city school districts thereof, for which it is practicable to determine the merit and flitness of applicants by competitive examinations. Appointments shall be made to, or employment shall be given in, all positions in the competitive class that are not filled by the promotion, reinstatement, transfer or reduction, as provided in this act, and the rules of the commission, by appointment from those certified to the appointing officer in accordance with the provisions of this act."

The evidence (which we have the right to consider) in the appeals of relators Sommer, Stricklin and Griffiths discloses that the Civil Service Commission of the City of Martins Ferry, Ohio, formally advised the Civil Service Commission of the State of Ohio that it would follow the rules and regulations of the Civil Service Commission of the State of Ohio as promulgated and authorized by §486-19, GC, insofar as such rules and regulations were applicable to such city. Sections 2 and 3 of such rules and regulations were introduced in evidence and insofar as applicable provide:—

"2. (a) Within thirty days after taking office, each elective officer and each principal appointive executive officer, board or commission, shall designate the position for which exemption from the competitive classified service is claimed under the provisions of paragraph 8, sub-section (a), of Section 486-8 of the law, and thereafter no change in the designation of exemptions claimed under this provision which would result in the separation of a classified employee from the service shall be made during the incumbency of such officer, board or commission, except after the filing of a statement of reasons for such proposed change satisfactory to the Civil Service Commission and thirty days notice thereof in order that a proper eligible list, if none is available, may be created by competitive examination from which to fill any position classified as the result of such change. If, at the expiration of thirty days after taking office, exemptions have not been designated by the appointing officer, board or commission, as herein provided, the exemptions theretofore designated and in effect under this provision of the law shall be considered and exemptions claimed by such appointing authority and will be continued in effect.

"3. Notices from appointing officers of the appointment of deputies exempt from the classified service under the provisions of paragraph 9, sub-section (a), of Section 486-8 of the law, shall be accompanied by a statement of the provisions of the law under which such deputies are appointed and a statement of the duties to be assigned to such appointees indicating the extent to which they are required to act for and in place of their principals."

The foregoing section of the Constitution and the provisions of the sections of the General Code provide that all positions and employments the merits and fitness of applicants for which it is impracticable to determine by competitive examination are in the unclassified service; and it appears that the test imposed thereby and the authorities cited herein as to whether relators, or any of them, were, when discharged, in the classified service as a matter of law, is the duty actually delegated to and performed by them and each of them and not the titles their respective employments carried. See **State ex rel. Emmons, et al, State Civil Service Commission, v Guckenberger, County Auditor,** and **State, ex rel. Emmons, et al, State Civil Service Commission v Lutz, Sheriff, 131 Oh St 466.**

In the case of Stoll v King, New York, 8 Howard's Practice

Reports 298, 299, the court defined the term "fiduciary" in these words:

"The term 'fiduciary,' as I understand it, involves the idea of trust, confidence. It refers to the integrity—the fidelity of the party trusted, rather than his credit or ability. It contemplates good faith, rather than legal obligation, as the basis of the transaction."

In the case of In re Cover's Estate, 204 Pacific 583, 588, the court held that:—

"Confidential and fiduciary relations are in law synonymous, and exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another, and the very existence of such relation precludes the party in whom the trust and confidence is reposed from participating in the profit or advantage resulting from the dealings of the parties to the relation."

The supreme court recognized that:—

"It is not easy to understand how merit and fitness of the occupant of this position (cashier in the automobile department in the office of the secretary of state) can be determined by competitive examination, because by far the largest and most important element of such fitness is that of integrity and character. That is not a thing to be discovered by competitive examination. It does not proclaim itself. It is a fitness that is 'ascertained' by close and intimate knowledge of the applicant and opportunity for observation of him.

"* * * the confidential and fiduciary relation is paramount. This paramount condition, as pointed out, cannot be determined by examination, but must be determined by the personal knowledge or the personal confidence of the appointing officer in the vigilance and faithfulness of the deputy or the one occupying the fiduciary relation." **Bryson v Smith, Secretary of State, 101 Oh St 203.**

In the case of **Ellis, City Solicitor, v Urner, City Auditor, et al, 125 Oh St 246,** the supreme court said:—

"Inasmuch as deputy clerks and deputy bailiffs sustain a close fiduciary and confidential relation to their principal, it is highly impracticable to determine merit and fitness by com-

petitive examination, and the principal for whom they work must necessarily be intrusted with the responsibility of selection."

Later the supreme court said in determining the same question:—

"Is it practicable to determine the merit and fitness of applicants for such positions (assistant cashier in the office of treasurer of state) by competitive examinations? We may be assisted in answering this question by asking ourselves the further question whether an official having such tremendous responsibilities as the treasurer of state should be required to delegate the duties above recited to some person not of his own selection, but assigned to him as the result of a competitive examination? The occupant of each of the positions involved in this action performs duties which demand and require strict integrity and high moral character and necessarily sustains an intimate fiduciary relation to the state treasurer. Express knowledge or technical equipment may be ascertained or determined by competitive examination, but, as stated by this court in **State, ex rel. Bryson, v Smith, Secy. of State, 101 Oh St 203,** 128 N. E., 261, 'the confidential and fiduciary relation is paramount'." **State, ex rel. Day, State Treas., v Emmons et, State Civil Service Commission of Ohio, 126 Oh St 19.**

The holdings in the cited cases were that the positions in question were such as were contemplated by the Constitution as being such as to render it impracticable to ascertain the merit and fitness of applicants therefor by competitive examination, and that such employees were not classified civil service employees.

In an opinion dated January 5, 1916, the Attorney General held that sub-department heads of the Department of Public Safety are not within the classified service as defined in §486-8 **GC, sub-division b.** See Ohio Attorney General Opinions 1916, Volume 3, Page 2481.

In the opinions in that case and in another case in which the opinion was rendered by the same attorney general reported in Attorney General Opinions 1916, Volume 1, Page 27, the attorney general reasoned that the directors of public service and safety of a municipality are in charge of those separate departments, and that a person in charge of a sub-department thereof is merely an employee without executive power and control and is not a classified civil service employee as defined by statute.

In the case of **City of Youngstown, Appellee, v Hindman, et al, Appellants, 66 Oh Ap 337,** decided April 21, 1939, which unlike the cases at bar involved defalcation, this court held that "the head of a municipal department whose duties 'include the keeping and supervising of all accounts, and collection and custody of all public money of the city," was "liable to the city for a defalcation of his subordinate", and that "under the Charter and ordinance of the city of Youngstown, the office of city cashier" was "an integral part of the department of finance of that city, and not a separate and distinct office."

Again in the cases of **City of Campbell v. John P. Hassay and Nathaniel C. Patton,** decided in 1945, and reported in **45 Abs 391,** which were also cases involving defalcation, we held that "a municipal ordinance passed by council creating the new office of Clerk of the Water Works and defining the duties of such clerk is in conflict with §3956 GC, et seq., providing for the management and control of city water works", and that "by virtue of §9 GC, a director of public service cannot escape legal responsibility for a shortage existing in the accounts of the water works department, maintained by a departmental assistant, by attempting to shift the actual responsibility for such shortage to such assistant", as no fiduciary relationship existed between such clerk and his superior, the director of public service.

In the case of **State, ex rel. Townsend, Appellee, v Berning, County Treasurer, Appellant, 135 Oh St 31,** the supreme court held that the position of a tax clerk in the treasurer's office was not one in which any fiduciary relationship existed between the holder thereof and his principal and that the merit and fitness for such position could be ascertained and determined by competitive examination; and in that case it was found that the duties of the position were of a routine nature and that merit and fitness could be ascertained by competitive examination, and, consequently, it was held that such clerk was in the classified service.

In the case of **Deering, Appellant, v. Hirsch et al., Appellees, 146 Oh St 288,** the supreme court held:—

"The director of recreation of the city of Cincinnati is not a secretary, assistant or clerk within the meaning of those words as used in **paragraph 8, subdivision (a) of §486-8 GC,** and is not specifically included by statute in the unclassified service."

"The appointing authority will not be permitted to assert that it is not practicable to determine by competitive examina-

tion the merit and fitness of a person for a given position, where that position has been deemed in the competitive class of the classified civil service as provided for in §486-8 (b) 1 GC, and is being filled by such person after a competitive examination before the civil service commission."

"Significantly neither the Constitution nor the statutes authorize the respondents to determine for themselves what positions in their offices shall be placed within the classified service." State, ex rel. Emmons et, State Civil Service Commission, v Guckenberger, County Auidtor, and State, ex rel. Emmons et, State Civil Service Commission, v Lutz, Sheriff, supra.

That holding applies to respondent's predecessors in this case.

In that case the supreme court also said:—

"Furthermore, it must be observed that under the statute a deputy may not be placed in the unclassified service unless (1) he is 'authorized by law to act for and in the place of' his principal, and (2) holds 'a fiduciary relation to such' principal. Both of these qualifications must be present."

Possibly some of the cases cited herein do not particularly support the conclusion we ultimately reach in this case, but they are cited for the purpose of demonstrating that not unlike this court other courts have had difficulty in solving the same problem or problems similar to that presented in this case.

Additional cases can be cited to support our conclusion, and to distinguish our decision in these cases from others made by this court and other courts, but no purpose would be accomplished thereby other than to unnecessarily lengthen this already too long opinion, and so we proceed forthwith to determine whether any or all of the relators are entitled to a classified service status as a matter of law.

In determining whether the trial judge erred in holding relator Shriver was entitled to a classified service status it must be remembered that we are limited to a consideration of the allegations in the pleadings upon which his case was tried in the court of common pleas, and what is found in the transcript of the docket and journal entries, and are deprived of the evidence which was before the trial judge, with the possible exception of the fact that the Civil Service Commission of the City of Martins Ferry, Ohio, formally advised the Civil Service Commission of the State of Ohio that it would

follow the rules and regulations of the Civil Service Commission of the State of Ohio as promulgated and authorized by §486-19 GC, insofar as such rules and regulations were applicable to such city, and that respondent failed to comply with the provisions of rules 2 and 3 of the Civil Service Commission of the State of Ohio, cited herein, for such exemptions "within 30 days after taking office", which was admitted by counsel in oral argument. Accordingly, from evidence before us we are unable to say that the trial judge erred in allowing to relator Shriver a writ of mandamus restoring him to the position from which he had been discharged.

In the appeals of relators-appellants there is evidence of respondent Ellis before us that he made no application to and did not notify the Civil Service Commission of the City of Martins Ferry, Ohio, of his desire or intention to claim any of the relators as being in the unclassified service by virtue of Items 8 or 9, paragraph a, §486-8 GC, and there is no evidence indicating that he complied with the provisions of rules 2 and 3 of the Civil Service Commission of the State of Ohio cited herein for such exemptions "within 30 days after taking office." The validity of rule 3 has been reviewed and held by the supreme Court to be within the rule making power of the civil service commission of the State of Ohio. See **State ex rel Myers v Blake, 121 Oh St 511**, and **State ex rel Neffner v Hummell, 142 Oh St 324, 27 OO 251.**

If we were to sanction the right of respondent to arbitrarily classify employees under his jurisdiction without complying with the provisions of rule 3 supra we would be refusing to follow the decision of the supreme court in State ex rel Emmons et al, State Civil Service Commission v Guckenberger, County Auditor, and State ex rel Emmons et al, State Civil Service Commission v Lutz, Sheriff, supra, and **Deering, Appellant, v Hirsch, et al, Appellees, 146 Oh St 288,** and would nullify the purposes and intent of the Civil Service Act as applicable to the cases at bar.

In the case of State ex rel Emmons v Guckenberger, supra, the supreme court defines the term "deputy" as follows:—

"When is an employee a deputy? **Sec. 9 GC**, provides that 'a deputy, when duly qualified, may perform all and singular the duties of his principal.' In Volume 2 of McQuillin on Municipal Corporations on page 446 it is stated that 'in general a deputy has the power to do everything which his principal may do.' In Volume 5 of the American and English Encyclopedia of Law on page 623 it is said that 'a deputy is

one who by appointment, exercises an office in another's right' and 'he must be one whose acts are of equal force with those of the officer himself.' In 22 Ruling Case Law, 584, appears the statement that 'deputies are usually invested with all the power and authority of the principal'."

There is no evidence before us that any relator had "power to do everything which" respondent could do or "perform all and singular the duties" of respondent, or "to exercise" respondent's "office in his right," or that their "acts were of equal force" with those of respondent, or "were equally vested with all the power and authority" of respondent.

The fact that relators can perform some acts for respondent is not sufficient to constitute them deputies, and the fact that relators-appellants collected money and performed duties of trust similar to those of respondent is not sufficient to bring them within the exceptions stated as the fiduciary relationship must be coupled with and attached to the right to sit in and take the place of respondent to the extent of and as set forth by the authorities cited.

We reach the conclusion that even though by reason of their duties relators-appellants might be classified as assistants or clerks to respondent, in which classifications we do not place them, that they have not been removed from the classified service by respondent as provided by Rule 3 supra, and that they are in the classified service where they were placed by the Civil Service Commission of the City of Martins Ferry, Ohio, originally.

"No doctrine is better established than that the acts of an officer within the scope of his powers and authority are presumed to be rightly and legally preformed until the contrary appears." **Steubenville v Culp, 38 Oh St 18.**

Accordingly in the absence of evidence questioning the method of procedure of the Civil Service Commission of Martins Ferry, Ohio, as affects relators we presume that such commission complied with law.

The cases of State, ex rel. Emmons, et al, State Civil Service Commission v Guckenberger, County Auditor, and State, ex rel. Emmons, et al, State Civil Service Commission v Lutz, Sheriff, supra, support our conclusion that in order to hold relators were unclassified employees we would have to find relators-appellants were authorized by law to act for and in the place of respondent and hold a fiduciary relation to him, which situation we do not find to exist in their cases.

The supreme court has clearly held that fiduciary relationships standing alone are not sufficient to remove relators from the classified service, but to be exempt therefrom they must bear both a fiduciary relationship to respondent, and further must be authorized by law to act for and in his place and stead.

Without further word, we conclude that relators-appellants hold positions established by ordinance of the City of Martins Ferry, Ohio, upon valid appointments following competitive examinations and certifications by the Civil Service Commission thereof; that the position of each relator is in the classified services of such city, and does not come within any of the applicable exceptions of §486-8 GC; and finally that relators were summarily removed by respondent without charges having been filed or any procedure taken before the Civil Service Commission as provided by law.

The judgment of the court of common pleas entered in favor of relator-appellee Shriver is affirmed; and the judgments of the court of common pleas entered against relators-appellants Sommer, Stricklin and Griffiths in their cases are reversed, and coming now to enter the judgment which the court of common pleas should have entered in their cases final judgment is entered for relators Sommer, Stricklin and Griffiths, and writs are allowed to them restoring them to the positions from which they were removed by respondents.

NICHOLS, PJ, and CARTER, J, concur in judgment.