2006 WY 59

**Owen R. PHILLIPS, Appellant (Plaintiff),**

v.

**Tom C. TONER, Appellee (Defendant).**

**No. 05-77.**

Supreme Court of Wyoming.

May 12, 2006.

Representing Appellant: C.M. Aron, of Aron & Hennig, LLP, Laramie, Wyoming.

Representing Appellee: Raymond B. Hunkins and Amanda Hunkins Newton, of Jones, Jones, Vines & Hunkins, Wheatland, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Dr. Phillips appeals from an Order Granting Summary Judgment.  He contends the district court erred in deciding that the doctrine of collateral estoppel barred his claims.  We affirm.

## ISSUE

[¶ 2]   Are Dr. Phillips' claims barred by collateral estoppel?

## FACTS

[¶ 3]   Dr. Phillips is a professor at the University of Wyoming and Chair of the Department of Economics.  In 2002, he was hired by Jack J. Grynberg to provide services as a consulting economist for Mr. Grynberg in a Colorado lawsuit.  A dispute arose between Dr. Phillips and Mr. Grynberg regarding Dr. Phillips' bill.  The dispute was not resolved and, in 2003, Dr. Phillips initiated litigation against Mr. Grynberg to recover payment in the amount of $52,896.00 for services rendered (*Phillips I* ).

[¶ 4]   The district court entered summary judgment in favor of Mr. Grynberg on the basis that Dr. Phillips and Mr. Grynberg had entered into a contract as reflected in a November 4, 2002, letter from Dr. Phillips to Mr. Grynberg.   The district court determined that Dr. Phillips had been paid in full pursuant to the provisions of the agreement.  Dr. Phillips responded to the order by filing a Rule 60 motion in which he asked the district court to set aside the judgment on the basis that the district court had erred in finding that the November 4, 2002, letter established the terms of the contract.  Dr. Phillips contended that the work for which he sought payment resulted from "an entirely different agreement … made with Mr. Ton-

er."  The district court denied the motion finding that there was only one contract and reiterated its decision that Dr. Phillips had been paid in full.  Dr. Phillips did not appeal the order granting summary judgment or the order denying the Rule 60 motion.  Instead, he sued Mr. Toner (*Phillips II* ).

[¶ 5]   Mr. Toner is a Wyoming attorney.  He represented Mr. Grynberg in the Colorado litigation.  In *Phillips II*, Dr. Phillips alleged that Mr. Toner was legally obligated for payment of the $52,896.00.  He alleged theories of recovery based upon money owed on account, breach of contract, *quantum meruit*, negligent misrepresentation, and fraud.  Mr. Toner denied the allegations and filed a motion for summary judgment.  The district court granted the motion finding that there were no genuine issues of material fact and Dr. Phillips' claims were barred by the doctrine of collateral estoppel.  Dr. Phillips timely appealed from the Order Granting Summary Judgment.

## STANDARD OF REVIEW

[¶ 6]   Summary judgment is appropriate when there is no genuine issue as to any material fact, and the prevailing party is entitled to judgment as a matter of law. *Lee v. LPP Mortgage Limited*, 2003 WY 92, ¶ 8, 74 P.3d 152, 157 (Wyo.2003).  A genuine issue of material fact exists when a disputed fact, if proven, would have the effect of establishing or refuting an essential element of an asserted cause of action or defense.  The record must be viewed from the standpoint most favorable to the party opposing the motion, giving to that party all favorable inferences that fairly may be drawn from the record.  *Id.*  "We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling."  *Merrill v. Jansma*, 2004 WY 26, ¶ 7, 86 P.3d 270, 274 (Wyo.2004).

## DISCUSSION

[¶ 7]   Collateral estoppel bars relitigation of previously litigated issues and involves an analysis of four factors:  (1) whether the issue decided in the prior adjudi-

cation was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 15, 25 P.3d 511, 517 (Wyo.2001). Dr. Phillips concedes that the prior adjudication in *Phillips I* resulted in a judgment on the merits and that he was a party in *Phillips I.* He contends that collateral estoppel does not bar his claim against Mr. Toner because the issues determined in *Phillips I* were not identical to the issues presented in *Phillips II.* He also contends that he did not have a full and fair opportunity to litigate his claims in *Phillips I.* In response, Mr. Toner asserts that all of the services for which Dr. Phillips seeks payment were provided pursuant to the contract between Dr. Phillips and Mr. Grynberg and that Dr. Phillips has been fully paid for his services. He contends that this issue was judicially determined in *Phillips I* and bars all of the claims asserted by Dr. Phillips in this case.

[¶ 8] In determining whether collateral estoppel applies it is necessary to compare the prior adjudication with the present action. The complaint in *Phillips I* was filed on June 24, 2003, in Albany County by Dr. Phillips against Jack J. Grynberg.[1] Pertinent allegations of the complaint state:

3. Defendant Grynberg is the president and CEO of Grynberg Petroleum Company, with its principal offices in Denver, Colorado.

4. Plaintiff Phillips is a resident of Laramie, Albany County, Wyoming.

. . .

6. Phillips earned his Ph.D. in Economics from Stanford University in 1980 and is presently Department Chairman and Professor of Economics in the Economics and Finance Department at the University of Wyoming; in addition, Phillips is engaged in the business of providing consulting services in the field of economic analysis, including services as an expert witness in litigation matters.

. . .

8. During 2002 Grynberg was a plaintiff in a civil lawsuit in the Montezuma County, Colorado, District Court, Case Number 98CV43, in which Grynberg and Defendant Celeste Grynberg asserted fourteen claims of breach of contract, fraud and antitrust violations against Shell Oil Company, Mobil Oil Corporation and other companies affiliated with them.

9. Beginning in August 2002, Grynberg repeatedly requested and pleaded with Phillips to perform certain services related to the said litigation.

10. On or about December 6, 2002, Grynberg's agent, Tom Toner, Esq., met with Phillips to induce him to perform the work and gave repeated assurances that he would be paid for his services.

11. On December 9, 2002, Phillips and Grynberg entered into a contract pursuant to which Phillips and Mason were engaged by Grynberg to perform a detailed evaluation and expert witness report concerning complex issues relating to the artificial suppression of the price of $CO_2$ in a particular market, and whether various vertically integrated companies had the incentive to misstate profits and suppress the price at a particular delivery point.

12. The said contract required Phillips and Mason to perform services under a severe deadline, and required them to employ others to perform services for computer data entry and econometric modeling.

13. In accordance with the said contract, Phillips and Mason submitted billings for work performed in December 2002 in the total amount of $19,743.92.

14. In accordance with the said contract, Grynberg timely paid the December billing of $19,743.92.

---

1. Charles F. Mason was also a named plaintiff. Mr. Grynberg's wife was also named as a defendant in her individual capacity and as trustee for the Grynberg children. She is not a party in *Phillips II.*

16. [sic] In reliance on the said contract and the assurances of payment from Grynberg and Toner, Phillips retained and paid for subcontract work to his detriment in the amount of $8,971.00.

## COUNT I: MONEY OWED ON ACCOUNT

17. By this reference Plaintiffs incorporate herein the allegations contained in Paragraphs 1–16, inclusive of this Complaint, as though they were set forth in their entirety.

18. In accordance with the said contract, Phillips and Mason performed services after December 2002 in the total amount of $52,896.00.

19. In accordance with the said contract, Phillips and Mason submitted billings for the work they performed after December 2002, including the work for which they paid others, in the total amount of $52,896.00, as set forth in the attached account.

20. Phillips and Mason have demanded payment of the $52,896.00 owing to them on the said account for services under the said contract.

21. Without justification or excuse, Grynberg has refused to pay the account.

## COUNT II: BREACH OF CONTRACT

22. By this reference Plaintiffs incorporate herein the allegations contained in Paragraphs 1–16, inclusive of this Complaint, as though they were set forth in their entirety.

23. Phillips and Mason performed all their obligations under the said contract.

24. Grynberg has breached the said contract by failing and refusing to pay Phillips and Mason the $52,896.00 owing to them.

## COUNT III: CONVERSION

25. By this reference Plaintiffs incorporate herein the allegations contained in Paragraphs 1–16, inclusive of this Complaint, as though they were set forth in their entirety.

26. In accordance with the said contract, Phillips and Mason delivered to Grynberg work product required under the contract, in the form of intellectual property of significant value to Grynberg.

27. By his use for their own benefit of the said work product, Defendants have converted to their own use and benefit intellectual property owned by Phillips and Mason valued at $74,000.00.

**WHEREFORE** Plaintiffs demand judgment [on] all Defendants in whichever amount proved at trial herein is greater of the $52,896.00 damages on Counts I and II, or the $74,000.00 damages on Count III; together with interest and costs of suit, and for such other and further relief as the Court deems appropriate, the premises considered.

[¶ 9] The statement of account referenced in the *Phillips I* complaint was attached to the complaint. The complaint was never amended. In due course, both parties sought summary judgment. On March 5, 2004, the district court issued its decision letter finding in favor of Mr. Grynberg. In its decision letter, the district court succinctly framed the dispute:

> The parties generally do not dispute that they entered into an agreement whereby Plaintiffs would perform expert consulting services for Grynberg. What they dispute is the terms of that agreement insofar as Plaintiffs' final bill. Plaintiffs contend that the "agreement" was that they would charge $275.00 per hour (plus costs) for their time; Grynberg agrees but asserts that the costs [were] to be "capped" at $11,000.00 (e.g. 40 hours of time) prior to the report-writing phase of the process.

In arriving at its decision, the district court relied extensively upon a letter from Dr. Phillips. The court deemed the letter an offer which ripened into a contract upon acceptance by Mr. Grynberg. The court stated:

> On November 4, 2002, Phillips sent correspondence to Grynberg that set forth the terms of his engagement as a consultant in the case. The letter, in pertinent part, stated:

If you desire to use my services, I shall work with a colleague in the Department of Economics and Finance to manage the data and to do the statistical analysis that estimates a CO2 price. **Time will be billed at $275/hour and expenses will be billed at my cost. Data management, statistical estimate, and analyses are likely to take 40 hours of time.** From this an expert report could be written, which would require additional time. Statements are submitted monthly to be paid on a thirty-day cycle.

*Correspondence from Phillips to Grynberg,* Nov. 4, 2002 (emphasis added). Subsequently, Grynberg telephoned Phillips and engaged him as a consultant. Over the next months, Plaintiffs continued their work for Grynberg, but the contract terms apparently were not discussed in any other detail.

In December 2002, Grynberg received a bill from Plaintiffs in the amount of $19,743.92. Grynberg paid the bill. However, Grynberg refused to pay subsequent invoices totaling $52,896.00 because he contended this sum far exceeded what the parties had agreed upon in their contract for Plaintiffs' services. The total amount billed by Phillips for his services, including his written report, is $76,639.92.

(Emphasis in original; footnotes omitted.)

[¶ 10] Ultimately, the district court determined that no genuine issues of material fact existed and granted defendant's motion for summary judgment on all counts. Essentially, the district court held that Dr. Phillips had agreed to perform the work for approximately $11,000.00, and was paid in full for that work. The court explained:

Here, Phillips was not bound to the *exact* 40-hour estimate but he was bound to only *slight discrepancy* from that amount (without some other modification to the contract terms). Varying a pre-report total estimate from $11,000 to approximately $69,743, the same being 634%, clearly is not a "slight discrepancy." In fact, Grynberg has already paid $19,743.92, an amount that is 79.49% over the estimated contract amount. While one might well understand and accept a variance of 10%, 20% or even 30% under certain circumstances, even 79.49% is more than a "slight discrepancy" by any definition of the term. The court holds that the amount which Plaintiffs seek to recover here is so far at odds with the estimated contract price as to constitute a material alteration of the terms of the contract which cannot be included as part of the contract. The court holds further that [G]rynberg bears no further obligation to Plaintiffs under the terms of the parties' agreement. Defendant's Motion for Summary Judgment on Plaintiffs' claims for breach of contract and money due on account is granted.

(Emphasis in original.) The Court entered an order granting summary judgment on March 24, 2004.

[¶ 11] Following entry of the summary judgment order, Dr. Phillips filed a pleading entitled Plaintiffs' Rule 60 Motion. According to the district court, in such motion "Plaintiffs allege that this court's factual finding of a 'letter contract' based upon Defendant Owen R. Phillips's November 4, 2002 letter to Grynberg is in error." The district court denied the motion and explained its reasoning in a decision letter:

Beginning in August 2002, Grynberg requested that Phillips perform services related to certain litigation. *Complaint on Account and for Conversions and Breach of Contract,* at ¶ 9 (June 24, 2003); *Affidavit of Plaintiff Owen R. Phillips,* at ¶ 3 (Nov. 17, 2003). Grynberg sent Phillips some documents to review and requested Phillips's assistance. When he did not hear from Phillips by October, Grynberg contacted Phillips to inquire whether Phillips would be able to assist him (Grynberg). *Phillips Deposition,* at pp. 39–42.

Initially, Phillips declined the work. *Affidavit of Plaintiff Owen R. Phillips,* at ¶ 4 (Nov. 17, 2003). However, after the October telephone conversation between him and Grynberg, Phillips agreed to review the documents Grynberg had sent (consisting of one box of about one thousand pages). *Phillips Deposition,* at pp. 39–42. Subsequently, Phillips sent Grynberg a letter dated November 4, 2002, which stated, in part:

I have reviewed the large stack of documents that you have sent me. In the case at hand, I can contribute information on plausible fair market (competitive) prices for CO2. To successfully procure these estimates I would need information on a variety of elements of the EOR production process, including capital expenditures, number of rigs employed, quantities of CO2 injected, and volumes of crude oil produced....

. . .

I shall not bill for the review of the documents (which stand at least 12 inches high when stacked). Let me know how you want to proceed. If you desire to use my services, I shall work with a colleague in the Department of Economics and Finance to manage the data and to do the statistical analysis that estimates a CO2 price. Time will be billed at $275/hour and expenses will be billed at my cost. Data management, statistical estimate, and analyses are likely to take 40 hours of time. From this an expert report could be written, which would require additional time. Statements are submitted monthly to be paid on a thirty-day cycle.

*Correspondence from Phillips to Grynberg,* at 1 (Nov. 4, 2002). The "intent" of this correspondence was to convey Phillips's beliefs "about the different values of the project." Phillips also sought to communicate that he "was able to begin an estimation of the fair market value of carbon dioxide gas if [Grynberg] wanted to do that, [Phillips] could help him." *Phillips Deposition,* at pp. 39–42. Phillips explained, by way of summary, that the November 4th letter stated: "If you want an opinion from me based on the documents you have, a report will roughly cost you." *Phillips Deposition,* at pp. 39–42.

A few weeks after Phillips sent the letter, Grynberg telephoned to express his interest in having Phillips work on the matter. *Phillips Deposition,* at pp. 39–42. Phillips confirmed that he would charge "$275 an hour." *Phillips Deposition,* at pp. 39–42.

In early- to mid-December, Grynberg's attorney, Tom Toner ("Toner"), met with Phillips. Phillips now asserts that Toner was sent to "induce him" to accept the work for Grynberg; Toner disclaims any knowledge of the contract negotiations. Toner asserts that he never had any discussions with Phillips regarding price estimates for the matter. Rather, Toner's only involvement in the price negotiations was his receipt of a copy of the November 4, 2002 letter from Phillips to Grynberg. *Toner Deposition,* at 21–22. Further, Toner was not aware that Phillips initially declined to do the work or that "Mr. Grynberg said that he was going to send Tom Toner to talk to him to try and talk [Phillips] into acting as an expert." *Toner Deposition,* at 7–8. In fact, Toner denies being a party to any "agreement" with Phillips; Grynberg, not Toner, hired Phillips. *Toner Deposition,* at 17–18.

In any event, Phillips now asserts that the "scope" of the contract changed after his meeting with Toner. *Phillips Deposition,* at pp. 39–42. In his *Affidavit,* Phillips claims that it was not until December 9, 2002 that he agreed to "perform a detailed evaluation and expert witness report for Mr. Grynberg's attorney, Mr. Toner, in a Colorado case." *Affidavit of Plaintiff Owen R. Phillips,* at ¶5 (Nov. 17, 2003). He also asserts:

> The terms of the work to be performed by Dr. Mason and myself were clear and unambiguous. We were to perform a complete evaluation of the pricing of natural gas as related to Mr. Grynberg's claim. We were to be paid at the rate of $250.00 per hour, which was less than the usual fee of $275.00 per hour.

*Affidavit of Plaintiff Owen R. Phillips,* at ¶6 (Nov. 17, 2003).

In *Plaintiff's Response to Defendant's Motion for Summary Judgment,* Phillips asserts that "the portion of the work performed by Plaintiffs before January 1, 2003 ... was performed and paid for. It is not at issue in this case.... [T]he written letter in November 2002, by its terms deals with only a small portion of the work." *Id.,* at p. 1 (Feb. 17, 2004). Thus,

Plaintiffs seem to concede that one of two scenarios occurred:

1. Phillips and Grynberg entered into an agreement based upon the November 4, 2002 letter and the late-November telephone call. The scope of that agreement was that Phillips would perform work at the rate of $275.00 per hour and that the work essentially would include what was detailed in the November 4th letter. Phillips asserts that the work he did in response to that contract was performed and paid for but that the "scope" of his work expanded after the December 2002 meeting with Toner; it is for this "second" contract that Phillips now seeks compensation; or

2. Phillips and Grynberg never entered into a contract—essentially Grynberg rejected Phillips's November 4th letter and sent Toner to persuade Phillips to accept the work. Then, on December 9, 2002, after meeting with Toner, Phillips entered into an agreement (with Toner or Grynberg) whereby Phillips was to be paid $250.00 per hour. The scope of that work was that Phillips was to perform a complete evaluation of the pricing of natural gas as related to Grynberg's claim.

It is based upon these two theories that Plaintiffs allege that this case should go forward as a breach of contract action and/or claim on account. Further facts will be set out below as necessary.

(Footnote omitted.) The court ultimately concluded:

If anything, the description set forth in the November 4th letter is more descriptive and all-inclusive [than] that described by Phillips as his understanding of his assigned tasks after his meeting with Toner. That said, this court again concludes that there are no genuine issues of material fact; there was no modification of the agreement based on the November 4th letter.

(Footnote omitted.) The court entered its Order Denying Plaintiffs' Motion Pursuant to Rule 60 on June 1, 2004. Plaintiffs did not appeal the order granting summary judgment or the order denying the Rule 60 motion.

[¶ 12] On July 29, 2004, Dr. Phillips filed his complaint in *Phillips II* against Mr. Toner.[2] In this complaint, Dr. Phillips alleged that the services he provided in the Colorado lawsuit were provided pursuant to a contract with Mr. Toner. His claim against Mr. Toner is capsulized in paragraph eleven of the complaint:

11. On or about December 9, 2002, Phillips and Toner entered into a contract pursuant to which Phillips was engaged by Toner to perform a detailed evaluation and expert witness report for Toner and Kelly concerning complex issues in the Colorado Lawsuit relating to the artificial suppression of the price of $CO_2$ in a particular market, and to the incentive for vertically integrated companies to misstate profits and suppress the price at a particular delivery point.

It is readily evident that paragraph eleven of the *Phillips II* complaint is nearly identical with paragraph eleven of the *Phillips I* complaint. In *Phillips II*, however, Dr. Phillips substituted the name of Mr. Toner for that of Mr. Grynberg.

[¶ 13] In *Phillips II*, Dr. Phillips alleged several causes of action against Mr. Toner. In Count I, entitled Money Owed on Account, he asserted:

19. Phillips submitted billings for the work he and Mason performed after December 2002, and for amounts [Phillips] paid to others, in the total amount of $52,896.00, as set forth in the attached account and cover letters.

20. Phillips has demanded payment of the $52,896.00 owing to him on the said account for services.

[¶ 14] In Count II, entitled Breach of Contract, he alleged:

24. Phillips, together with Mason and Phillips' subcontractors, performed all

---

2. Dr. Phillips also named Jon Kelly as a defendant; however, Mr. Kelly was never served with the complaint. Dr. Mason is not a party in *Phillips II*.

their obligations under the said contract with Toner.

25. Toner has breached the said contract by failing and refusing to pay Phillips the $52,896.00 due and owing for Phillips, Mason and Phillips' subcontractors in accordance with the engagement by Toner for Phillips to perform expert witness services.

[¶ 15] In Count III, entitled *Quantum Meruit,* he alleged:

29. Toner and Kelly have been unjustly enriched by their use, and suppression, in the Colorado Lawsuit of the work product and intellectual property owned by Phillips and Mason valued at $74,000.00 or such greater amount as may be proved at trial.

[¶ 16] In Count IV, entitled Fraud, he alleged:

44. As a direct and proximate result of the reasonable reliance on the false representations of Toner, Phillips has been damaged in the sum of $52,896.00 for services performed and expenditures made.

[¶ 17] In Count V, entitled Negligent Misrepresentation, Dr. Phillips alleged:

49. As a direct and proximate result of the reasonable reliance on the negligent misrepresentations of Toner, Phillips has been damaged in the sum of $52,896.00 for services performed and expenditures made.

Dr. Phillips attached his January 31, 2003, and February 26, 2003, billings to Mr. Grynberg, to the complaint.

[¶ 18] Our comparison of the prior adjudication with the issues present in the current litigation results in the inescapable conclusion that the district court properly granted summary judgment to Mr. Toner. The statements of account attached to the complaints in *Phillips I* and *Phillips II* are identical. The services and charges for which Dr. Phillips seeks payment in both lawsuits are identical. The amount which Dr. Phillips alleges is due is the same. The only apparent difference in both lawsuits relates to the named defendant. In *Phillips I,* Dr. Phillips asserted that Mr. Grynberg and related family members owed him the money. In *Phillips II,* Dr. Phillips alleges that Mr. Toner

owes him for the services which he provided. Dr. Phillips contends this distinction is critical. We disagree.

[¶ 19] In *Phillips I,* the district court determined that all of the services provided by Dr. Phillips were performed pursuant to the November 4, 2002, letter agreement between Dr. Phillips and Mr. Grynberg. The district court also concluded that Dr. Phillips was paid in full for the services which are the subject of his claim in *Phillips II.* Although Dr. Phillips contended in his Rule 60 motion that the district court erred in making such a determination, the district court rejected his argument, and the findings became final and conclusive when Dr. Phillips failed to appeal the decision rendered in *Phillips I.* Dr. Phillips had a fair and full opportunity to litigate all issues regarding the terms of the agreement for which he performed services and whether he was paid for those services in *Phillips I. Pokorny v. Salas,* 2003 WY 159, ¶ 19, 81 P.3d 171, 176 (Wyo.2003).

[¶ 20] Dr. Phillips contends that the doctrine of collateral estoppel does not preclude his claim against Mr. Toner because in *Phillips I* "there was no litigation of a contract between Phillips and Toner." Dr. Phillips also notes that, in *Phillips I,* "there was no litigation of the fraud committed by Toner in obtaining work with no intent to pay for it." Those statements, even if accurate, do not prevent application of collateral estoppel to bar Dr. Phillips' claims. The doctrine of collateral estoppel bars relitigation of previously litigated issues. *Pokorny,* ¶ 12. The issues that were litigated in *Phillips I* are integral to all of the claims asserted in *Phillips II.* Resolution of those issues against Dr. Phillips in *Phillips I* is fatal to the claims asserted in *Phillips II.*

[¶ 21] In *Phillips I,* the district court determined that all of the work for which Dr. Phillips sought payment was performed pursuant to the November 4, 2002, letter agreement and that he had been fully paid for his services. The services for which he now seeks payment from Mr. Toner are identical and the amount sought is identical. Even if Mr. Toner was also liable for payment of the services, Dr. Phillips is not entitled to collect because the obligation was satisfied.

If the debt for which a joint, joint and several, or several obligor is bound is completely satisfied, the creditor can have no further right against anyone. As there is but a single obligation, though more than one person is bound to pay it, performance by one of the obligors ... necessarily discharges them all.

12 Samuel Williston, *Treatise on the Law of Contracts* § 36.12, at 653 (Richard A. Lord ed., 4th ed.1999). Because he has been fully compensated, Dr. Phillips has no damage claim against Mr. Toner. Damages are an essential element of all of the claims asserted against Mr. Toner.

[¶ 22] Dr. Phillips' fraud claim against Mr. Toner merits specific comment. Dr. Phillips sums up his fraud claim against Mr. Toner as follows:

It is undisputed, and blithely admitted by Toner, that he asked Phillips to do the work of an expert in litigation in another state. There is no suggestion by Toner that Phillips was doing the work without charge. Toner concedes that Phillips expected payment. Toner admits he did not intend to pay for the work. That is fraud.

Actions sounding in fraud must be pled with particularity and proved by clear, unequivocal and convincing evidence. *Lee*, ¶ 11. Fraud will never be presumed and a party relying on a fraud claim must demonstrate genuine issues of material fact even at the summary judgment stage by clear, unequivocal and convincing evidence. *Bitker v. First National Bank in Evanston*, 2004 WY 114, ¶ 12, 98 P.3d 853, 856 (Wyo.2004). "Fraud is established when a plaintiff demonstrates, by clear and convincing evidence that, (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Bitker*, ¶ 12.

[¶ 23] Mr. Toner's position regarding the fraud allegation was set forth in his answer to the complaint. He stated, "Defendant Toner admits that he had no intention to pay Plaintiff for work done by Plaintiff or his associates in connection with the Colorado litigation, because Defendant had no agreement with Plaintiff to pay for those services. Plaintiff's agreement was with Defendant's client in the Colorado litigation, . . . ." In his affidavit Mr. Toner elaborated:

8. Mr. Phillips has accused me of fraud because I stated in the Answer in this case that I had no intention to pay Mr. Phillips for work done by him or his associates in connection with the Cortez case because I had no agreement with Mr. Phillips to pay for those services. It is true that I did not intend to pay Mr. Phillips for the work on the case because Mr. Grynberg was to pay Mr. Phillips for the work that Mr. Phillips did on the Cortez case. I never told Mr. Phillips that I would pay him for his work on the Cortez case because his agreement was with Mr. Grynberg as he alleged in his earlier lawsuit. As he did with all of the experts in the Cortez case, Mr. Grynberg made his arrangements for compensation directly with Mr. Phillips. Mr. Phillips sent bills for his work to Mr. Grynberg, and Mr. Grynberg made payments directly to Mr. Phillips. None of those payments were made through me, and I have never made any payments to any of the expert witnesses employed in the Cortez case. It was my understanding that the contract for services in this case was between Mr. Grynberg and Mr. Phillips, and I certainly expected that Mr. Grynberg would pay Mr. Phillips for work that Mr. Phillips did, but I did not know what financial arrangements they had ultimately agreed upon, and I did not know if the bills sent by Mr. Phillips to Mr. Grynberg were consistent with their agreement or not.

The evidence in the record provides additional factual support for Mr. Toner's understanding.

[¶ 24] When a party accused of fraud has presented facts, in support of a motion for summary judgment, that refute the allegations of fraud, "the party relying upon the fraud claims then must demonstrate the existence of genuine issues of material fact by clear, unequivocal and convincing evidence." *Bitker*, ¶ 12. Dr. Phillips did not allege fraud with particularity nor did he meet his burden of demonstrating genuine issues of material fact by "clear, unequivocal and convincing

evidence." Summary judgment on the fraud claim was proper even if not barred by collateral estoppel.

[¶ 25] We find no error in the district court's determination and affirm the Order Granting Summary Judgment.