# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 33

**OCTOBER TERM, A.D. 2016**

**March 17, 2017**

BRUCE R. ELWORTHY and ANNE B.
MARSHALL,

Appellants
(Plaintiffs),

v.                                                           S-16-0165

FIRST TENNESSEE BANK, FIRST
HORIZON LOAN CORPORATION, and
RBS CITIZENS BANK,

Appellees
(Defendants).

*Appeal from the District Court of Sheridan County*
*The Honorable John G. Fenn, Judge*

*Representing Appellants:*
> Bruce R. Elworthy and Anne B. Marshall of Elworthy & Marshall, P.C., Sheridan, WY. Argument presented by Mr. Elworthy and Ms. Marshall.

*Representing Appellees:*
> Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper, WY; and Steven A. Ellis of Goodwin Proctor, LLP, Los Angeles, CA for Appellees First Tennessee Bank National Association and First Horizon Loan Corporation; and Rick A. Thompson and Lucas Buckley of Hathaway & Kunz, P.C., Cheyenne, WY for Appellee RBS Citizens Bank. Argument presented by Messer's Emery, Ellis, and Thompson.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

HILL, Justice.

[¶1]    Bruce Elworthy and Anne Marshall (collectively "Plaintiffs") filed an action against Defendants alleging claims for breach of contract, fraud in the inducement, and violation of a California law governing fraudulent business practices, all claims in relation to Defendants' financing of Plaintiffs' real property located in Wyoming and California.  Plaintiffs filed their action in Wyoming and sought monetary and punitive damages, rescission and restitution, and an order declaring all encumbrances recorded against their Sheridan, Wyoming property void and expunged.

[¶2]    The district court granted Defendants' Rule 12 motions to dismiss and for judgment on the pleadings.  In so ruling, the court applied Wyoming law and found that Plaintiffs' breach of contract claims were barred by the statute of frauds and that Plaintiffs had failed to plead their fraud and fraud-based claims with the required particularity.  We affirm.

## ISSUES

[¶3]    Plaintiffs failed to include in their brief a separate statement of issues presented for review, as required by W.R.A.P. 7.01(d).[1]  Within their statement of the case, Plaintiffs do, however, state as follows:

> Appellants respectfully submit that the findings by the
> District Court that: (1) the Procedural and Substantive Laws
> of the State of Wyoming controlled the litigation and (2) that
> the fraud counts were defective was reversible error and that
> the subsequent [dismissal] pursuant to Rule 12 of the

---

[1] This Court may refuse to consider an appellant's contentions for failing to provide a statement of the issues presented for review.

> We have previously refused to consider the contentions of a party who has failed to provide a statement of the issues.  *See, e.g.*, *Cline v. Safeco Ins. Companies*, 614 P.2d 1335, 1337 (Wyo.1980).  In *Cline*, we explained:

> > It is not our job to draw up a list of issues to frame appellant's argument. For this court to undertake this task would mean that we would run the risk of deciding the appeal on an issue with respect to which the appellee had not been notified and thus had inadequate defense opportunities.

*Montoya v. Navarette-Montoya*, 2005 WY 161, ¶ 4, 125 P.3d 265, 268 (Wyo. 2005) (quoting *Cline*, 614 P.2d at 1337).

Defendants do not appear to have been hampered in their ability to identify and argue the issues on appeal, and we will therefore proceed with our review despite Plaintiffs' failure to separately set forth a statement of issues presented for review.

Wyoming Rules of Civil Procedure that the District Court ordered was based upon an improper analysis of the applicable law[.]

[¶4]   Plaintiffs do not reference the district court's ruling on their breach of contract claim, but in the argument portion of their brief, they contend the court erred in that ruling. Given Plaintiffs' statement above and the arguments they make in their briefing, we summarize the issues on appeal as follows:

>   A.   Did the district court err in ruling that Wyoming law should govern the parties' dispute?
>
>   B.   Did the district court err in ruling that Plaintiffs' breach of contract claims were barred by the statute of frauds?
>
>   C.   Did the district court err in ruling that Plaintiffs failed to plead their fraud-based claims with the particularity required by W.R.C.P. 9(b)?
>
>   D.   Did the district court abuse its discretion in ruling that it would not permit any further amendments to Plaintiffs' complaint?

## FACTS

### A.   Events Leading to Wyoming Litigation

[¶5]   Bruce Elworthy and Anne Marshall (collectively "Plaintiffs") are married and are both attorneys. In 1997, Plaintiffs bought a home in Sheridan, Wyoming, and in 2002, they began looking for a home in California, where they hoped to spend winters. In 2005, they found a home they wished to purchase in Monterey, California, priced at around $3,000,000.[2]   Along with the home purchase, Plaintiffs were also required to purchase the sellers' country club membership for $118,000.

[¶6]   To purchase the California property, Plaintiffs worked with a mortgage broker by the name of Sherri Wall. Ms. Wall originally recommended a mortgage that required only the California property as collateral, but before Plaintiffs closed on the property, Ms. Wall informed Plaintiffs that she had found a better mortgage deal. This deal, which Ms. Wall referred to as the "best financing deal by far," required that Plaintiffs take out four mortgages to secure financing on the California property. The mortgages were to be

---

[2] The California property is at times referred to as "Belavida."

2

issued by First Horizon Home Loan Corporation, which subsequently merged into First Tennessee Bank National Association ("First Tennessee"), and consisted of: a $1,000,000 first mortgage on the Sheridan property; a $150,000 home equity line of credit (HELOC) on the Sheridan property; a $1,500,000 first mortgage on the California property; and a $282,000 HELOC on the California property. Plaintiffs agreed to this financing arrangement and closed on the California property.

[¶7]   After Plaintiffs moved into the California property, they discovered numerous defects that had not been disclosed by the sellers, including flooding and failing windows and an insect and rodent infestation. Plaintiffs contacted the sellers, their real estate broker, and the contractor that built the home to have the undisclosed defects addressed. When no resolution had been reached by the spring of 2007, Plaintiffs demanded rescission of the sales agreement. After that demand was rejected, Plaintiffs, in November 2007, filed litigation in California against the sellers, the contractor, and the real estate brokers, seeking damages and rescission of the sales agreement on the California property.

[¶8]   In December 2007, shortly after filing the California litigation, Mr. Elworthy was diagnosed with a brain tumor that required surgery. After Plaintiffs were advised this would affect Mr. Elworthy's ability to work for some time, they asked Ms. Wall for the name of someone with the lender who could discuss their situation. Ms. Wall referred Plaintiffs to John Harris, an attorney with First Tennessee in its Irving, Texas office.

[¶9]   Plaintiffs thereafter contacted Mr. Harris and informed him of their situation. Mr. Harris offered a forbearance agreement on the California portion of the loans, by which payments would be deferred on those loans until the conclusion of the California litigation and then rolled into the principal balance. Plaintiffs agreed they would continue to prosecute the law suit and would pay the property taxes, homeowner assessments, insurance, maintenance, utilities and other such expenses on the property. Plaintiffs also agreed they would do as much "fix up" as was required to market the property and would move out over the coming months to enable the property to be marketed. In discussing the matter, Plaintiffs asked Mr. Harris if he wanted some form of written documentation of the forbearance and he stated that no writing was required for the action he was taking. Plaintiffs thereafter stopped making payments on the California property.

[¶10] Mr. Harris contacted Plaintiffs in the spring of 2008 and informed them that he was leaving First Tennessee but that the oral forbearance agreement would remain in place. Shortly thereafter, however, Plaintiffs learned that a MetLife entity was servicing the loans, and they began receiving late notices from MetLife. Plaintiffs then contacted an attorney with MetLife, who denied the existence of a forbearance agreement and informed Plaintiffs that if they did not bring the mortgages on the California property current, MetLife would issue a notice of default. Plaintiffs were unable to bring the

mortgages current, and in June 2008, MetLife issued a notice of default. Foreclosure proceedings on the California property began in 2009.

[¶11]  While the foreclosure was pending, Plaintiffs settled with some of the defendants in the California litigation. In April 2010, Plaintiffs contacted First Tennessee in an effort to delay foreclosure proceedings on the California property and find out what type of payment would be required to stop the foreclosure proceedings. First Tennessee would not consent to a delay and would not allow Plaintiffs to cure the default by making a payment on the mortgage. First Tennessee informed Plaintiffs that the only way they could avoid foreclosure was to immediately pay the primary mortgage and HELOC on the California property. Plaintiffs could not do that, and on April 23, 2010, First Tennessee foreclosed on the property.

[¶12]  The suit against the sellers of the California property went to trial in March 2011. The California court found negligent misrepresentations by the sellers but denied the rescission remedy that Plaintiffs sought on two grounds: 1) the property had already been foreclosed on so it could not be returned to the sellers; and 2) Plaintiffs delayed bringing the litigation for two years and the doctrine of laches therefore barred the remedy of rescission. By a decision issued in November 2013, a California appellate court affirmed, agreeing with the trial court that the remedy of rescission was no longer available because of the foreclosure.

**B.      Proceedings in Wyoming District Court**

[¶13]  On April 16, 2012, while Plaintiffs' California appeal was still pending, Plaintiffs filed a complaint in district court in Sheridan County. The complaint named First Tennessee and First Horizon Loan Corporation (collectively "First Tennessee") as well as other financial institutions as defendants and asserted three counts: 1) breach of contract relating to the oral forbearance agreement; 2) interference with prospective economic advantage, relating to Plaintiffs' loss of the rescission remedy following the foreclosure on the California property; and 3) declaratory relief, seeking a declaration cancelling all encumbrances on Plaintiffs' Sheridan, Wyoming property.

[¶14]  On September 6, 2012, Plaintiffs filed their first amended complaint, which added two new defendants and two new claims. The new claims were for: 1) misrepresentation related to foreign bank manipulation of the London Interbank Offered Rate ("LIBOR") and First Tennessee's issuance of mortgages, including those on Plaintiffs' California property, pegged to the LIBOR rate; and 2) reformation and restitution related to First Tennessee's use of mortgages tied to the LIBOR rate.

[¶15]  All defendants named in the first amended complaint filed motions to dismiss or for judgment on the pleadings. The district court dismissed all claims against some of the named defendants. The court denied First Tennessee's motion to dismiss except for the

4

claim against it for interference with a prospective economic advantage.  The court denied in its entirety the motion for judgment on the pleadings filed by RBS Citizens Bank ("RBS"), the entity that now owns the HELOC on the Sheridan, Wyoming property.  With respect to Plaintiffs' misrepresentation claim against First Tennessee, the court ruled:

> At the hearing, Plaintiffs admitted that this count does not meet the pleading requirements of W.R.C.P. 9.  However, they made an oral motion to amend this count to allege fraud in the inducement by Ms. Wall.  Plaintiffs contend that Ms. Wall was acting as the agent for First Tennessee, and that they never would have entered into these mortgages if she had not misrepresented her status as an independent broker.  Plaintiffs also alleged that they would not have put the Pioneer Property up as collateral if Ms. Wall had not induced them to do so, and they are seeking to invalidate those mortgages due to Ms. Wall's fraud.  Under these facts, Plaintiffs could potentially be entitled to relief.  The Court recognizes that Plaintiffs' misrepresentation claim has become a "moving target."  W.R.C.P. Rule 15 provides that leave to amend "shall be freely given when justice so requires."  Therefore, the Court finds that Plaintiffs shall be granted leave to amend their complaint to correct the deficiencies of their misrepresentation claim.  Accordingly, the motion to dismiss this claim should be denied at this time.

[¶16] On February 27, 2015, Plaintiffs filed their second amended complaint against First Tennessee and RBS.  The second amended complaint asserted claims for breach of contract, fraud in the inducement, violation of the California Business and Professions Code, and violation of the Truth in Lending Act ("TILA"), and sought monetary and punitive damages, rescission and restitution in relation to the TILA and fraud claims, and a declaration that all encumbrances on Plaintiffs' Wyoming property are void.[3]

[¶17] RBS answered the second amended complaint and filed a Rule 12(c) motion for judgment on the pleadings.  First Tennessee also filed an answer, which it followed with a combined Rule 12(b)(6) motion to dismiss and 12(c) motion for judgment on the pleadings.  On May 20, 2016, the district court issued its Second Order on Motions to Dismiss and for Judgment on the Pleadings.  In ruling on the dispositive motions, the court judged the sufficiency of the second amended complaint based solely on facts and allegations contained therein, and it ruled that Wyoming law governed the parties' dispute.

---

[3] Plaintiffs eventually voluntarily dismissed their TILA claims with prejudice.

[¶18] Applying Wyoming law, the district court ruled that Plaintiffs' breach of contract claim was barred by the statute of frauds and that no exception to the statute applied. Turning to Plaintiffs' fraud claims, the court found that Plaintiffs failed to plead the claims with the particularity required by W.R.C.P. 9(b) and thus dismissed those claims. The court likewise dismissed Plaintiffs' fraudulent business practices claim under the California Business and Professions Code for failing to plead that claim with the specificity required for a fraud claim. In ruling on Plaintiffs' claims for restitution and rescission and declaratory relief, the court found the claims derivative of the other defective claims and ruled that those must likewise be dismissed. Finally, the court noted that Plaintiffs had not formally made a motion to amend during the motions hearing but had suggested they might seek to amend the complaint to add new allegations of fraud based on the disavowal of the forbearance agreement. The court then ruled:

> In this case, the Plaintiffs have previously been given two opportunities to amend their complaint to cure the deficiencies. They were put on notice of the defects in their *First Amended Complaint* during the first round of motions, but they did not cure these defects through amendment. Therefore, the Court finds in its discretion that a third amendment should not be allowed.

[¶19] Plaintiffs filed a timely notice of appeal to this Court.

## STANDARD OF REVIEW

[¶20] In dismissing Plaintiffs' complaint, the district court ruled pursuant to W.R.C.P. 12(b)(6), which governs motions to dismiss for failure to state a claim, and W.R.C.P. 12(c), which governs motions for judgment on the pleadings. Our review of a dismissal under either rule is *de novo*. *Swinney v. Jones*, 2008 WY 150, ¶ 6, 199 P.3d 512, 515 (Wyo. 2008). Concerning our review of a Rule 12(b)(6) dismissal, we have said:

> When reviewing W.R.C.P. 12(b)(6) motions to dismiss, we accept the facts stated in the complaint as true and view them in the light most favorable to the plaintiff. We will sustain such a dismissal when it is certain from the face of the complaint that the plaintiff cannot assert any fact which would entitle him to relief. *Sinclair v. City of Gillette*, 2012 WY 19, ¶ 8, 270 P.3d 644, 646 (Wyo.2012). Although we view the facts in the light most favorable to the plaintiff, we have also stated that "Liberal construction of pleadings does not excuse omission of that which is material and necessary in order to entitle one to relief." *Excel Constr., Inc. v. HKM*

6

*Eng'g, Inc.*, 2010 WY 34, ¶ 35, 228 P.3d 40, 49 (Wyo.2010) (citing *William F. West Ranch, LLC v. Tyrrell*, 2009 WY 62, ¶ 9, 206 P.3d 722, 726 (Wyo.2009)).

*Stroth v. North Lincoln County Hosp. Dist.*, 2014 WY 81, ¶ 6, 327 P.3d 121, 125 (Wyo. 2014).

[¶21]  Concerning Rule 12(c) motions for judgment on the pleadings, we have said:

> A defendant is entitled to judgment on the pleadings if the undisputed facts appearing in the pleadings, supplemented by any facts of which the district court may take judicial notice, establish that no relief can be granted.... A judgment on the pleadings is appropriate if all material allegations of fact are admitted in the pleadings and only questions of law remain.

*Inman v. Boykin*, 2014 WY 94, ¶ 13, 330 P.3d 275, 279 (Wyo. 2014) (quoting *Newport Int'l Univ. v. Wyo. Dep't of Educ.*, 2008 WY 72, ¶ 12, 186 P.3d 382, 386 (Wyo. 2008)).

## DISCUSSION

### A.  Choice of Law

[¶22] The district court reviewed the allegations in Plaintiffs' second amended complaint and concluded that based on those allegations, the relevant transactions occurred in Wyoming and Wyoming law therefore governed the dispute.  Plaintiffs contend that the court's analysis was flawed and that California law should govern.  We find no error in the district court's conclusion.[4]

[¶23]  In analyzing choice of law questions, this Court uses the approach defined by the *Restatement (Second) of Conflict of Laws*:

---

[4] First Tennessee contends that there is no need to engage in a choice of law analysis because there is no material difference between Wyoming and California law. *Boutelle v. Boutelle*, 2014 WY 147, ¶ 21, 337 P.3d 1148, 1155 (Wyo. 2014) ("In the absence of a conflict, there is no need for the court to engage in a conflict of laws analysis."); *Act I, LLC v. Davis*, 2002 WY 183, ¶ 11, 60 P.3d 145, 149 (Wyo. 2002) ("When there is no conflict, the Court applies the law of the forum."). The district court, however, noted some differences between Wyoming and California law governing exceptions to the statute of frauds, and First Tennessee's brief on appeal sets forth the elements of fraud under California law and those elements differ somewhat from Wyoming's elements. While we are not persuaded that the differences in Wyoming and California law would necessarily change the outcome of the parties' dispute, rather than engage in an extended analysis of those differences, we find it more expedient to simply determine which state has the more significant contacts to the issues before us.

The Second Restatement method is constructed around the principle that the state with the most significant contacts to an issue provides the law governing that issue. *See* [*Ingersoll v. Klein*,] 46 Ill.2d 42, 262 N.E.2d [593] at 594–95 [Ill.1970]. A court therefore conducts a separate choice-of-law analysis for each issue in a case, attempting to determine which state has the most significant contacts with that issue. *International Adm'rs, Inc. v. Life Ins. Co. of North America*, 753 F.2d 1373, 1376 n. 4 (7th Cir.1985). The Second Restatement enumerates specific factors that identify the state with the most significant contacts to an issue, and the relevant factors differ according to the area of substantive law governing the issue and according to the nature of the issue itself. *See, e.g.*, Restatement (Second) at §§ 6, 145, 188. To properly apply the Second Restatement method, a court must begin its choice-of-law analysis with a characterization of the issue at hand in terms of substantive law. *Id*. at § 7. By prescribing this analytical approach, the Second Restatement follows the principle of *depecage*, which has been long applied in connection with various methods for choice of law. *See* Willis L.M. Reese, *Depecage: A Common Phenomenon in Choice of Law*, 73 Colum. L.Rev. 58 (1973).

*Boutelle*, ¶ 20, 337 P.3d at 1155 (quoting *Act I, LLC v. Davis*, 2002 WY 183, ¶ 10, 60 P.3d 145 at 149 (Wyo. 2002)).

[¶24]   The district court based its choice of law determination solely on the allegations in Plaintiffs' second amended complaint, and we do likewise.  In doing so, we will first set forth the relevant allegations from the second amended complaint, and we will then consider each claim individually in relation to the state contacts alleged.

[¶25]   The second amended complaint alleged:

> ¶ 2:    "[A]ll agreements entered into that are the subject of this litigation were made or to be performed, in part or in whole, in the County of Sheridan and the State of Wyoming. . . . Plaintiffs seek to reform the title to certain real property located in this Judicial District and these claims otherwise affect real property located in this Judicial District."
> ¶ 3:    "Plaintiffs BRUCE R. ELWORTHY and ANNE B. MARSHALL are husband and wife and residents of Wyoming located at [street address omitted], City of Sheridan, County of Sheridan, State of Wyoming."

¶ 26: "All of these loans were arranged in the State of Wyoming, the papers were signed and notarized in Wyoming and the forbearance agreement referred to below were (sic), in part negotiated in Wyoming and performed in Wyoming and California."

¶ 41: "Plaintiffs then contacted John Harris who identified himself as an attorney admitted in the State of Texas and a representative of the **LENDER** in **LENDER'S** Irving, Texas office. After informing Harris of the facts, Plaintiffs were offered a forbearance agreement on the Belavida portion of the Loans[.]"

¶ 54: "Plaintiffs were referred to Larry Cole who identified himself as MetLife's Texas counsel."

¶ 55: "In the course of discussions with Cole, Cole denied the existence of any forbearance agreement[.]"

¶ 56: "Cole threatened Plaintiffs that he would issue a Notice of Default if Plaintiffs did not, then and there, bring the primary Belavida mortgage current."

¶ 57: "Cole and MetLife then issued a Notice of Default on or around June 23, 2008."

¶ 105: "Under the facts of this case and due to the Defendants' actions as enumerated herein, there is a dispute between Plaintiffs and Defendants as to the propriety and validity of the encumbrances placed on Plaintiffs' real property located at [street address omitted], City of Sheridan, County of Sheridan, State of Wyoming."

## 1.    Contacts Related to Breach of Contract Claim

[¶26]   The Second Restatement identifies several factors to be considered in determining which state has the most significant relationship to the contracting transaction and the parties to the contract. They include: a) the place of contracting; b) the place of the contract's negotiation; c) the place of performance; d) the location of the contract's subject matter; and e) the residence or place of business of the parties. *Restatement (Second) of Conflict of Laws* § 188 (1971) (October 2016 update).

[¶27] Plaintiffs' breach of contract claim relates to the forbearance agreement. According to the allegations in the second amended complaint, the forbearance agreement was negotiated in Wyoming and Texas. This presumably means Wyoming and Texas were also the places of contracting, a fact reinforced by ¶ 2 of the second amended complaint ("[A]ll agreements entered into that are the subject of this litigation were made or to be performed, in part or in whole, in the County of Sheridan and the State of Wyoming."). The second amended complaint further alleges that the contract

9

was performed in part in Wyoming and California, and related to property in California. Finally, the second amended complaint alleges that First Tennessee was operating out of its Irving, Texas office when it entered into the forbearance agreement, and, given that they negotiated from Wyoming, Plaintiffs presumably were residing in their Wyoming property.

[¶28]  Plaintiffs contend that because the forbearance agreement concerns the California property and the loan on that property, California is the state with the most significant contacts to the parties and the transaction.  We disagree.  While the location of the contract's subject matter is one factor to consider, we have rejected it as the controlling factor.  *BHP Petroleum (Americas), Inc. v. Texaco Expl. and Prod., Inc.*, 1 P.3d 1253, 1258 (Wyo. 2000) ("The location of the mineral production in Wyoming, the subject matter of the contract, is only one factor not the paramount factor that demonstrates the most significant relationship of the parties.").  The forbearance agreement was negotiated, in part, in Wyoming, was entered into with Wyoming residents, and was performed, in part, in Wyoming.  Wyoming's contact with the transaction and the parties to the contract is more significant than California's contact, and we thus agree with the district court's conclusion that Wyoming law should govern the breach of contract claim.[5]

## 2.     Contacts Related to Fraud-Based Claims

[¶29]  Plaintiffs allege that Sherri Wall misrepresented to Plaintiffs that she was an independent mortgage broker and this misrepresentation induced them to accept her recommendations on which loan package to accept in purchasing their California property.   Both of Plaintiffs' fraud-based claims stem from this alleged misrepresentation.

[¶30]  The choice of law approach prescribed by the Second Restatement depends on whether the representation and the reliance on that representation were made in the same state or different states.   Here, Plaintiffs received and acted in reliance on the representations in Wyoming, as noted by paragraph 26 of the second amended complaint ("All of these loans were arranged in the State of Wyoming, [and] the papers were signed and notarized in Wyoming[.]").  Ms. Wall's location when she made the representation is not as clear.   The second amended complaint does not allege Ms. Wall's place of business or residence, and the only indication of her location is a reference in ¶ 13 to advice Plaintiffs provided her in forming an independent brokerage when GMAC closed its Spokane office.  Plaintiffs do allege Ms. Wall was an employee of First Tennessee, and the second amended complaint's only allegation concerning First Tennessee's place of business is a reference to its Irving, Texas office.  We presume then that Ms. Wall's

---

[5] Neither party has alleged that Texas law should govern the breach of contract claim.

10

representation was made in either Washington or Texas while Plaintiffs' reliance took place in Wyoming.

[¶31] When a defendant's representations and a plaintiff's reliance take place in different states, the Second Restatement prescribes the following factors to consider in making a choice of law determination on a fraud or misrepresentation claim:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971) (October 2016 Update).

[¶32] Ms. Wall's representations were made to Plaintiffs who are, and were at the time of the representations, residents of Wyoming. Plaintiffs acted in reliance on the representations in Wyoming by accepting the terms of the mortgages and executing the loan documents in Wyoming. The loans encumbered property in both Wyoming and California, and the continuing performance required by Plaintiffs is to make payments in Wyoming on the Wyoming mortgage and HELOC. Applying the Second Restatement choice of law factors, we again affirm the district court's conclusion that Wyoming law should govern the fraud-based claims.

[¶33] Plaintiffs' remaining claims for rescission and restitution, and for declaratory relief, are derivative of their fraud claims and are thus likewise governed by Wyoming law.

## B.  Dismissal of Plaintiffs' Breach of Contract Claim

[¶34] The district court found that the oral forbearance agreement was an amendment to the mortgage loans on the California property and was thus barred by the statute of frauds. Plaintiffs do not take issue with the district court's ruling that the forbearance agreement was subject to the statute of frauds. They instead contend that their second amended complaint adequately pled an equitable exception to the statute of frauds and the court therefore erred in dismissing the breach of contract claim. We again find no error in the district court's ruling.

11

[¶35]  Plaintiffs argued to the district court that under California law, the statute of frauds would not bar their contract claim because they had relied to their detriment on the forbearance agreement.  The district court, having found that Wyoming law should govern, did not consider the California detrimental reliance doctrine and instead looked to Wyoming's equitable estoppel exception to the statute of frauds.  The Wyoming doctrine operates as follows:

> "'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse.'" *Snake River Brewing Co., Inc. v. Town of Jackson*, 2002 WY 11, ¶ 28, 39 P.3d 397, 407–08 (Wyo.2002) (quoting *State Farm Mut. Auto. Ins. Co. v. Petsch*, 261 F.2d 331, 335 (10th Cir.1958)). "Equitable estoppel arises only when a party, by acts, conduct, or acquiescence causes another to change his position." *Roth v. First Sec. Bank of Rock Springs, Wyo.*, 684 P.2d 93, 96 (Wyo.1984). The elements of equitable estoppel are a lack of knowledge, reliance in good faith, and action or inaction that results in an injury. *Id*.

*Parkhurst v. Boykin*, 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo. 2004).  For equitable estoppel to operate as an exception to the statute of frauds, the change in position in reliance on the oral agreement must be "of such character and to such an extent that the interposing of the defense of the statute would be a fraud."  *Redland v. Redland*, 2012 WY 148, ¶ 92, 288 P.3d 1173, 1194 (Wyo. 2012) (quoting *Davis v. Davis*, 855 P.2d 342, 349 (Wyo. 1993)).

[¶36]  The court rejected equitable estoppel as a defense to the statute of frauds bar upon finding that Plaintiffs failed to allege reliance that was: a) a change in position; b) for the worse; or c) of such character as to rise to the level of a fraud.  Essentially, the court concluded that every action Plaintiffs took in alleged reliance on the forbearance agreement was an action that Plaintiffs were otherwise obligated to take or had made a decision to take independently of the forbearance agreement.  On appeal, Plaintiffs do not discuss those findings or identify any error in the findings.  They instead argue that promissory estoppel is also an exception to the statute of frauds and that the district court erred in rejecting their promissory estoppel argument.

[¶37]  Plaintiffs are correct that promissory estoppel operates as an exception to the statute of frauds.  *Redland*, ¶ 91, 288 P.3d at 1193-94 (citing *Davis*, 855 P.2d at 349)).  The district court recognized this exception, just as it did the equitable estoppel

exception, but it rejected Plaintiffs' promissory estoppel argument because Plaintiffs did not assert a claim for promissory estoppel in their second amended complaint. The court explained:

> [I]t is clear that the *Second Amended Complaint* does not currently state a cause of action for promissory estoppel. Further, despite Plaintiffs' request, this Court cannot re-write their complaint to state such a cause of action. Although Wyoming is a notice pleading jurisdiction, "the simplification of pleadings under our rules, specifically Rule 8(a), W.R.C.P., in this instance, cannot be taken to eliminate the necessity of stating in clear terms the nature and basis of the relief sought." *Kearney Lake, Land & Reservoir Co. v. Lake DeSmet Reservoir Co.*, 475 P.2d 548, 552 (Wyo. 1970). Plaintiffs had the obligation of drafting their pleadings in such a way as to state the nature their causes of action and the basis upon which relief can be granted. The Court cannot read into the complaint a cause of action which has not been pled, especially a cause of action which is inconsistent with the facts that have been pled. [Footnote 14]
>
> [Footnote 14]: Plaintiffs have pled that a valid contract exists. Promissory estoppel applies only in the absence of a valid contract. Although W.R.C.P. 8(e) allows a plaintiff to plead alternative causes of action, Plaintiffs in this case have not done so, and although the Court must construe the pleadings to do "substantial justice" it cannot read facts and allegations into the complaint that are not contained therein. "Liberality does not go so far as to excuse omission of that which is material and necessary in order to entitle relief." *Sump v. City of Sheridan*, 358 P.2d 637, 642 (Wyo. 1961).

[¶38] We agree with the district court's reasoning. We have held that "[w]hen the complaint shows the existence of a built-in defense, a notice to dismiss lies." *Weber v. Johnston Fuel Liners, Inc.*, 540 P.2d 535, 540 (Wyo. 1975) (citing *Vossler v. Peterson*, 480 P.2d 393, 394 (Wyo. 1971)). In such circumstances, a plaintiff is required to plead the factual allegations that would prevent operation of the built-in defense.

> The pleader must be careful not to allege facts that constitute a defense to his claim for relief, or, for that matter, a defense to his defense. For example, a complaint in an action seeking specific performance for the sale of land that alleges an oral agreement defeats itself by showing a prima facie defense of the statute of frauds. This so-called "built-in defense" may be

13

either partial or absolute. If partial, it can be avoided by a showing that certain facts or circumstances vitiating the defense exist. Thus, a statute of frauds defense to the action hypothesized above can be avoided if the complaint indicates that there has been part performance of the oral contract, perhaps in the form of improvements on the land.

5 Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 1226 (3d ed. Jan. 2017 Update) (footnotes omitted).

[¶39] In their second amended complaint, Plaintiffs alleged the breach of an oral agreement to amend the mortgage loans on their California property. In so pleading, Plaintiffs alleged facts that created a prima facie statute of frauds defense. Because they then failed to allege facts sufficient to rebut the statute of frauds defense, the district court properly dismissed the breach of contract claim.

## C.    Dismissal of Fraud-Based Claims

[¶40] The district court dismissed Plaintiffs' fraud-based claims because they were not pled with the particularity required by Rule 9(b) of the Wyoming Rules of Civil Procedure. There is no question that the Rule 9(b) pleading requirements had to be met, and we find no error in the district court's conclusion that the second amended complaint failed in that regard. *Smithco Eng'g, Inc. v. Internat'l Fabricators, Inc.*, 775 P.2d 1011, 1018 (Wyo. 1989) ("Clearly, the law of the forum controls procedural matters.").

[¶41] Plaintiffs' fraud-based claims include a claim for fraud in the inducement and a claim for violation of the California Business and Professions Code. Both claims, however, rely on the alleged misrepresentations by Sherri Wall that she was an independent mortgage broker, which Plaintiffs claim induced them to enter into mortgages to their detriment. Because the claims are for fraud in the inducement, the elements that must be alleged to support the claims are: "1) the defendant made a false representation intending to induce action by the plaintiff; 2) the plaintiff reasonably believed the representation to be true; and 3) the plaintiff suffered damages in relying on the false representation." *Claman v. Popp*, 2012 WY 92, ¶ 43, 279 P.3d 1003, 1016 (Wyo. 2012).[6]   Against these elements, we consider the district court's ruling that Plaintiffs failed to plead their fraud claims with the particularity required by Rule 9(b) of the Wyoming Rules of Civil Procedure.

---

[6] Plaintiffs allege that First Tennessee knew or should have known that foreign banks were manipulating the London Interbank Offered Rate (LIBOR) to which the Belavida mortgage was tied and should have disclosed the LIBOR manipulation to Plaintiffs. These allegations seem to suggest a negligent misrepresentation claim rather than a fraud claim, but no such claim was asserted in the second amended complaint. We therefore have no need to further consider these allegations.

14

[¶42]   Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."   W.R.C.P.  9(b) (LexisNexis 2015).  We have said:

> Rule 9(b) of the Wyoming Rules of Civil Procedure requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." W.R.C.P. 9(b); *Richey*, 904 P.2d at 801 n. 2. To comply with the rule:
>
>> ... the references to 'circumstances' is to matters such as the time, place, and contents of the false representations, as well as the identity of the person making the representation and what he obtained thereby. It is the pleading of these matters with precision that serves the rule's purpose by apprising defendant of the claim against him and of the acts relied upon as constituting the fraud charged. A pleading that simply avers the technical elements of fraud does not have sufficient informational content to satisfy the rule's requirement.
>
> *Johnson v. Aetna Cas. & Sur. Co. of Hartford, Conn.*, 608 P.2d 1299, 1302–03 (Wyo.1980) (quoting Wright & Miller, Federal Practice and Procedure: § 1297). *See also United States ex rel. Lacy v. New Horizons, Inc.*, 348 Fed.Appx. 421, 424 (10th Cir.2009) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and [she] must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.") (alteration in original).

*Rogers v. Wright*, 2016 WY 10, ¶ 21, 366 P.3d 1264, 1273 (Wyo. 2016); *see also White v. Shane Edeburn Constr., LLC*, 2012 WY 118, ¶ 26, 285 P.3d 949, 957 (Wyo. 2012) (facts supporting elements of fraud must be alleged clearly and distinctly); *Lee v. LPP Mortg. Ltd.*, 2003 WY 92, ¶ 11, 74 P.3d 152, 158 (Wyo. 2003) (Rule 9(b) "requires reference to matters such as the time, place, and contents of false representations, the identity of the person making the representation, and what he obtained thereby."); *In re Adoption of Hiatt*, 242 P.2d 214, 216 (Wyo. 1952) (fraud complaint must allege tangible facts with certainty and definiteness).

[¶43] In support of their fraud claims, Plaintiffs alleged as follows in their second amended complaint:

> 11.	Plaintiffs' credit scores (FICA in excess of 800) permitted them to buy anywhere without encumbering the Wyoming Property. Agent Sherri Wall ("Wall") obtained loan commitments for several properties with an acquisition cost equal to or greater than the Monterey Property without any Wyoming encumbrance.
>
> 12.	Wall was well known to Plaintiffs and did business with Plaintiffs while Wall was employed by GMAC Home Loans. When the Loans were arranged by Wall, Plaintiffs understood based on affirmative representations made on several occasions to Plaintiffs by Wall that Wall was an independent loan broker. Plaintiffs, given their past business relationship over many years, had reason to trust Wall's judgment and her representations. Had Plaintiffs known the true situation, Plaintiffs would not have accepted Wall's advice and proposal without further examination.
>
> 13.	Wall continually assured Plaintiffs that she was an independent loan broker and went so far as to ask Plaintiffs for advice on the formation of her new business, an independent mortgage brokerage, when GMAC closed its Spokane office in 2005. Plaintiffs had enjoyed a relationship with Wall since the 1990's and had referred friends and clients to her over many years.
>
> 14.	Plaintiffs located Belavida in the Fall of 2005 and contacted Wall to secure financing for the proposed purchase of Belavida. Wall assured Plaintiffs that Belavida, standing alone, would be the only property encumbered by any mortgage.
>
> 15.	After further consultations with Wall, Plaintiffs made an offer on Belavida with a financing contingency and a 30 day close * * *. * * * Wall counseled Plaintiffs to submit an offer, the terms of which were that a first position mortgage was to be placed on Belavida only with the mortgage in the amount of $2,256,000 with the balance due coming from Plaintiffs' personal assets and a HELOC that Wall would arrange on Belavida. No discussion was had with regard to any obligation being placed on the [street address omitted] Property in Sheridan, Wyoming * * *.
>
> * * * *

16

18.    * * * Wall then contacted the Plaintiffs and advised them that she had found what the best financing deal was "by far." The "deal" consisted of the following: The Loans consisted of a new money mortgage in the amount of $1,500,000 on Belavida, a $282,000 HELOC on Belavida, a $1,000,000 refinance on [Plaintiffs' Wyoming property] and a $150,000 HELOC on [Plaintiffs' Wyoming property]. There was a small existing mortgage on [Plaintiffs' Wyoming property] which as paid in escrow from the proceeds of the new mortgage leaving a balance paid into the Belavida Escrow of $1,059,756.73 which was a combination of Plaintiffs' funds and the [Wyoming] mortgages. All of the "new money" from these Loans went into Belavida. In addition, Plaintiffs paid in the sums of $180,000 in out-of-escrow real estate commissions and $118,000 to the Pasadera Country Club in order to purchase the Sellers' club membership.

* * * *

25.    In reliance on their relationship with Wall * * *, Plaintiffs accepted Wall's advice and proceeded to close the transaction of the terms set forth in Paragraph 18, above.

* * * *

27.    Plaintiffs are informed and believe and thereon allege that during the escrow on the Monterey property, Wall became an employee of [First Tennessee] and that this was the sole reason for her recommendation of the "deal."

* * * *

82.    Within three (3) years from the date of filing the within action, Plaintiffs learned that Wall was, in fact, an employee of [First Tennessee] and not [an] independent loan broker as she had claimed.

83.    Had Plaintiffs known the true facts they would not have entered into the mortgage obligations as described in Paragraph 18, above.

84.    [First Tennessee] acted in conscious disregard of the truth and in furtherance of a scheme or plan to cause Plaintiffs to accept these mortgages based on their long standing relationship with and reasonable reliance on the claim by Wall that she was an "independent" and "working for Plaintiffs."

* * * *

99.    By representing herself as an independent loan broker while, in fact, an employee of [First Tennessee], Wall

17

induced Plaintiffs to enter into the mortgages described in Paragraph 18, above, by means of fraud.

[¶44] We agree with the district court that these allegations lack the particularity required by Rule 9(b). First, as the district court observed, the second amended complaint alleged only in general terms that Ms. Wall represented that she was an independent broker. The second amended complaint alleged that Plaintiffs "understood based on affirmative representations made on several occasions" that Ms. Wall "was an independent broker," and it alleged that "Wall continually assured Plaintiffs that she was an independent broker." The second amended complaint failed, however, to allege with any type of clarity and specificity the contents of Ms. Wall's alleged representations. *See Lee*, ¶ 11, 74 P.3d at 158 (Rule 9(b) "requires reference to matters such as the * * * contents of false representations."); *see also Phillips v. Toner*, 2006 WY 59, ¶¶ 8, 24, 133 P.3d 987, 990, 996 (allegation that defendant met with plaintiff "to induce him to perform the work and gave repeated assurances that he would be paid for his services" failed to allege fraud with required particularity); *Mueller v. Zimmer*, 2005 WY 156, ¶¶ 14, 17, 124 P.3d 340, 349, 350 (Wyo. 2005) (allegation that defendant made "unjustified and false" claim for unpaid overtime failed to allege fraud with required particularity).

[¶45] Additionally, Plaintiffs' second amended complaint failed to allege when Ms. Wall made the representations that she was an independent broker. The second amended complaint alleged that Ms. Wall became an employee of First Tennessee after Plaintiffs made their initial offer on the California property and it alleged that "Plaintiffs understood based on affirmative representations made on several occasions" that Ms. Wall was an independent broker when they accepted her recommendation on the revised loan deal. The second amended complaint did not, however, allege that Ms. Wall repeated her representation that she was an independent broker between her recommendation on the original mortgage proposal and her recommendation on the new loan recommendation. Accepting the allegations as true, Ms. Wall represented that she was an independent broker at a time when she was an independent broker. The allegations are silent as to whether Ms. Wall repeated the representation after she became a First Tennessee employee, and there is therefore no allegation to support a claim that a misrepresentation by Ms. Wall induced Plaintiffs to accept the second recommended loan package.

[¶46] Finally, we also agree with the district court that the second amended complaint failed to allege how Plaintiffs were harmed by the alleged misrepresentation concerning Ms. Wall's employment. The second amended complaint alleged that had Plaintiffs known Ms. Wall was employed by First Tennessee, they "would not have accepted Wall's advice and proposal without further examination." It further alleged that "[h]ad Plaintiffs known the true facts they would not have entered into the mortgage obligations[.]" The second amended complaint did not, however, allege what additional information would have been important to Plaintiffs or that Plaintiffs would not have

18

gone through with the purchase of the California property had they known that Ms. Wall was a First Tennessee employee. Additionally, the second amended complaint did not allege: that Ms. Wall misrepresented the terms of the loan package or failed to disclose that the loan deal would encumber both the Wyoming and California properties; that Plaintiffs were willing to accept only a loan package that encumbered the California property and left the Wyoming property unencumbered; or that there were better loan packages available to them that would not have encumbered both the California and Wyoming properties.

[¶47] In short, the second amended complaint failed to allege with any specificity that there were better loan options available to Plaintiffs, that Plaintiffs would have accepted those loan options, and that those loan options would have left Plaintiffs in a better position. Based on this failure and the failure of the second amended complaint to plead with particularity the content of the representations by Ms. Wall and when those misrepresentations were made, we conclude that the district court properly dismissed Plaintiffs' fraud-based claims for failure to plead the claims with the particularity required by Rule 9(b) of the Wyoming Rules of Civil Procedure.[7]

## D.    **District Court's Denial of Further Complaint Amendments**

[¶48] We generally review a district court's ruling on a motion to amend for an abuse of discretion. *Dane v. Dane*, 2016 WY 38, ¶ 17, 368 P.3d 914, 918 (Wyo. 2016). Plaintiffs did not, however, state an issue for our review with respect to the district court's ruling that no further amendments of Plaintiffs' complaint would be permitted, and Plaintiffs' first argument concerning the ruling appears in their reply brief. There, Plaintiffs simply point out that they amended their complaint only one time after responsive pleadings were filed and they request that this Court afford them an opportunity to again amend their complaint. Under these circumstances, we decline any further review of the district court's ruling on further amendments. *See Golden v. Guion*, 2016 WY 54, ¶ 31, 375 P.3d 719, 727 n.5 (Wyo. 2016) (Court does not consider issues not supported by cogent argument).

## CONCLUSION

[¶49] Based on the allegations in Plaintiffs' second amended complaint, Plaintiffs' breach of contract claim was barred by the statute of frauds, and Plaintiffs failed to plead their fraud claims with the particularity required by Rule 9(b) of the Wyoming Rules of Civil Procedure. Affirmed.

---

[7] Plaintiffs' claims for rescission and restitution and for declaratory relief are derivative of their defective fraud claims and were thus likewise properly dismissed.

19